IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

LISA SOLOMON, on behalf of herself
and all others similarly situated,

                Plaintiff,

v.                                       CIVIL ACTION NO. 3:23-0398

AIR ACADEMY FEDERAL CREDIT UNION,

                Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Plaintiff Lisa Solomon's Motion to Remand this action to the Circuit Court of Cabell County, West Virginia. ECF No. 10. Defendant Air Academy Federal Credit Union opposes the motion. For the following reasons, the motion **IS GRANTED**.[1]

**I.
BACKGROUND**

On March 27, 2023, Plaintiff filed a Class Action Complaint in State court regarding certain overdraft fees (OD fees) imposed upon consumers by Defendant. Plaintiff generally asserts that OD fees and insufficient funds fees are major sources of revenue for banks, resulting in the collection of tens of millions of dollars. *Compl.* ¶¶10, 14. Plaintiff contends that one subset of OD fees Defendant collects is on a process known as "Authorize Positive, Settle Negative Transactions" (APSN Transactions) when debit cards are used. *Id.* ¶17. Specifically, Plaintiff explains that, when a consumer uses a debit card with sufficient funds to cover the amount

---

[1] Defendant also filed a Motion to Dismiss and Compel Arbitration. ECF No. 5. As the Court finds this action must be remanded, the Court declines to address the arbitration motion.

charged, "Defendant immediately reduces [the] consumer['s] checking account[] for the amount of the purchase, sets aside funds in the checking account to cover that transaction, and adjusts the consumer's displayed 'available balance' to reflect that subtracted amount." *Id.* ¶18. Despite the fact Defendant holds these funds to pay for the transaction and these funds are unavailable to the consumer for other transactions, if a consumer makes another debit purchase before the first transaction is settled and a negative balance results, Defendant assesses an OD fee on the original transaction despite the fact Defendant already held sufficient funds to pay for that transaction. *Id.* ¶¶20-24.

Plaintiff further describes the process this way: "at the moment a debit card transaction is getting ready to settle, Defendant releases the hold placed on funds for the transaction for a split second, putting money back into the account, then re-debits the same transaction a second time" "to determine if it overdraws an account." *Id.* ¶¶43, 45. Plaintiff asserts "[t]his secret step allows Defendant to charge OD Fees on transactions that never should have gotten them—transactions that were authorized into sufficient funds, and for which Defendant specifically set aside money to pay." *Id.* ¶46. Plaintiff alleges the OD fees on these APSN Transactions constitutes unjust enrichment and a breach of contract, including a breach of the covenant of good faith and fair dealing.

On May 19, 2023, Defendant removed this action under the Class Action Fairness Act (CAFA), 28 U.S.C. §§ 1332(d)(2) and 1332(d)(6), and diversity of jurisdiction under 28 U.S.C. § 1332(a). On remand, Plaintiff challenges jurisdiction under CAFA, and Defendant appears to have abandoned its assertion that diversity jurisdiction exists as to the individual

Plaintiff under § 1332(a). Therefore, the Court only examines whether it has jurisdiction under CAFA.

## II.
## DISCUSSION

Federal district courts have limited jurisdiction and possess only such power as authorized by the Constitution and Congress through statutes. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994) (citations omitted). In 2005, Congress enacted CAFA, 28 U.S.C. § 1332(d), "to address abuses of the class action device." *Johnson v. Advance Am.*, 549 F.3d 932, 935 (4th Cir. 2008). As part of the reform, CAFA relaxed the requirements for diversity jurisdiction and gave "district courts authority over class actions with (1) more than 100 class members, (2) an amount in controversy exceeding $5,000,000 and (3) minimally diverse parties." *Scott v. Cricket Commc'ns, LLC*, 865 F.3d 189, 194 (4th Cir. 2017) (citing 28 U.S.C. § 1332(d)(2), (5)).

When a case is removed from state court to federal court by invoking CAFA, the notice of removal must "include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89, (2014); *see* 28 U.S.C. § 1446(a) (providing, in part, a notice of removal must "contain[] a short and plain statement of the grounds of removal"). However, if a plaintiff contests that the jurisdictional amount is met under CAFA, it is the defendant's "'burden of *demonstrating* that removal jurisdiction is proper.'" *Scott*, 865 F.3d at 194 (quoting *Strawn v. AT & T Mobility LLC*, 530 F.3d 293, 297 (4th Cir. 2008) (italics in *Strawn*)). In instances when a plaintiff has not specified the amount of damages in the Complaint, "the defendant must provide evidence to show . . . what the stakes of litigation . . . are given the plaintiff's actual demands." *Scott*, 865 F.3d at

-3-

194 (citation omitted; italics added). If there are "doubts regarding a defendant's asserted amount in controversy, 'both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied.'" *Id.* (quoting *Dart Cherokee*, 135 S. Ct. at 554); *see also* 28 U.S.C. § 1446(c)(2)(B) (providing, "removal of the action is proper on the basis of an amount in controversy asserted under subparagraph (A) if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a)"). In calculating the amount in controversy, the Court shall aggregate "'the claims of the individual class members' . . . 'who fall within the definition of the proposed or certified class.'" *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013) (italics deleted) (quoting 28 U.S.C. §§ 1332(d)(6), 1332(d)(1)(D)).

In its Response to Plaintiff's Motion to Remand, Defendant argues that the face of Plaintiff's Complaint sufficiently alleges an amount in controversy exceeding $5,000,000 so it is now Plaintiff's burden to show to a "legal certainty" that such a recovery is an impossibility. In support, Defendant cites *Ray v. Wells Fargo Bank, N.A.*, Civ. Act. No. 11-01477 AHM (JCx), 2011 WL 1790123, at *2 (C.D. Cal. May 9, 2011). However, the Court finds the "legal certainty" test described in *Ray* is inapplicable here.

Initially, the Court notes that *Ray* was decided by the Central District of California and before the Supreme Court's decision in *Dart Cherokee* and the Fourth Circuit's decision in *Scott*. Defendant merely glosses over these subsequent and controlling cases in discussing what standard of review it believes should apply.[2] Additionally, the Court finds the district court in *Ray*

---

[2]In discussing the standards for removal and remand of CAFA cases, Defendant only

actually describes four different standards to apply depending upon whether (1) the Complaint sufficiently alleges an amount in controversy exceeding the jurisdictional requirement for CAFA (requiring the plaintiff to show by a legal certainty recovery below that amount), (2) the amount of damages in the Complaint is unclear or ambiguous (requiring the defendant to show the jurisdictional amount is met by a preponderance of the evidence), (3) the Complaint affirmatively denies an amount in controversy meeting the jurisdictional threshold (applying the legal certainty test to the defendant), or (4) the plaintiff asserts in the Complaint that the amount in controversy is less than the jurisdictional amount, but does not specifically allege the amount in controversy and uncertainty exists (applying the preponderance of the evidence standard to the defendant). 2011 WL 1790123, at *2-3. In choosing amongst these standards, the district court found the case before it fell within the fourth category and applied the preponderance of the evidence standard to the defendant. *Id.*, at *4-5.

      Here, Defendant focuses on the first factor in *Ray* based upon its position that, accepting the allegations in the Complaint as true, there are more than $5,000,000 in damages alleged on the face of the Complaint and, thus, Plaintiff is required to show to a "legal certainty" that the jurisdictional threshold has not been met. As Plaintiff has not met this standard, Defendant asserts Plaintiff's remand motion must be denied. Upon review, the Court disagrees with Defendant's analysis.

---

references footnote 6 of *Scott*, which discusses a CAFA exception that Defendant admits is irrelevant to this case. *Def.'s Mem. of Law in Supp. of its Opp. to Pl.'s Mot. to Remand*, at 4.

In the Complaint, Plaintiff defines the proposed class as:

> All Defendant checking accountholders who, during the applicable statute of limitations, were checking account holders of Defendant and were assessed an overdraft fee on a debit card transaction that was authorized on sufficient funds and settled on negative funds in the same amount for same amount for which the debit card transaction was authorized.

*Compl.* ¶77. Plaintiff further alleges that "[t]he Class consist[s] of thousands of members, whose identities are within the exclusive knowledge of Defendant and can be ascertained only by resorting to Defendant's records." *Id.* ¶80. Nowhere in the Complaint does Plaintiff allege a specific amount in controversy. Instead, to make its case that the face of the Complaint sufficiently alleges an amount in controversy exceeding the jurisdictional requirement for CAFA, Defendant cherry picks and takes out of context Plaintiff's allegations to cobble together an amount exceeding the jurisdictional threshold.

In support of its argument, Defendant quotes paragraph 14 of the Complaint, which alleges that, "[t]hrough the imposition of these fees, Defendant has made substantial revenue to the tune of tens of millions of dollars" from overdrafts. However, it is clear from the previous paragraphs that Plaintiff is referring to the amount of revenue Defendant collects from *the entirety* of the overdraft fees it charges its customers and not only the subset of overdraft fees that attach to APSN Transactions. *See Compl.* ¶¶10-13 (discussing that overdraft and insufficient fund fees are a major source of revenue for banks and some banks plan to stop charging these fees entirely). Similarly, Defendant cites paragraphs 28 of the Complaint, which provides, in part, that "Defendant is free to protect its interests and either reject those intervening transactions or charge OD Fees on those intervening transactions—and it does the latter to the tune of millions of dollars each year." *Id.* ¶28. Again, the "millions of dollars each year" mentioned in this paragraph is not

referring to the revenues from OD fees on the initial debit card transaction, rather it refers to the OD fees assessed on the intervening transactions. Moreover, as Plaintiff mentions, "there is *zero evidence* in the record and Defendant offers none here—to confirm when Air Academy began implementing its . . . OD Fee practices and policies, and whether it stopped." *Pl.'s Reply*, at 9, ECF No. 15.[3]

Despite the fact the "millions" mentioned in these paragraphs is distinguishable from whatever Defendant collects on APSN Transactions and the time frame of "per year" refers to the timeframe OD fees are collected on intervening transactions and not the initial transactions, Defendant builds upon its erroneous reading of the Complaint by assuming Plaintiff has alleged Defendant collects at least $2,000,000 "per year" in OD fees on APSN Transactions. Defendant then multiplies that number by the ten year statute of limitations for breach of contract found in West Virginia[4] (Plaintiff's place of residence) and the six year statute of limitations for breach of contract found in Colorado[5] (Defendant's alleged principal place of business), for a range of class-wide damages from $20,000,000 to $12,000,000. Therefore, Defendant argues the face of the Complaint exceeds $5,000,000 and the burden shifts to Plaintiff to show to a "legal certainty" the jurisdictional threshold has not been met. However, as the entire premise of Defendant's calculation rests on a fictious reading of the Complaint and is overinclusive, the Court rejects

---

[3] Curiously, Defendant does not cite paragraph 29, which actually does provides that "Defendant . . . sought millions more in OD Fees on APSN Transactions." *Id.* ¶29. Nevertheless, even if Defendant had cited it, this paragraph is very general and does not provide the time period these millions were sought or, for that matter, whether it is $2,000,000 or $100,000,000.

[4] W. Va. Code § 55-2-6.

[5] C.R.S.A. § 13-80-103.5.

Defendant's argument. *See Pauley v. Hertz Global Holdings, Inc.*, No. 3:13-31273, 2014 WL 2112920 (S.D. W. Va. 2014) (remanding action where Defendant's calculation of the amount in controversy was overinclusive and Defendant did not show by a preponderance of the evidence an amount exceeding $5,000,000 under CAFA was met).

As the amount of damages cannot be ascertained from the Complaint, this Court applies—as it must—the standards set forth in *Dart Cherokee* and *Scott* in determining whether remand is appropriate. Where, as here, Plaintiff has challenged that the jurisdictional threshold of CAFA has been met, the burden is on Defendant to demonstrate the propriety of removal. *See Scott*, 865 F.3d at 194. To do so in situations where a specific damage amount is not alleged, it is the obligation of Defendant to "*provide evidence* to show . . . what the stakes of litigation . . . are given the plaintiff's actual demands." *Scott*, 865 F.3d at 194 (citation omitted; italics added). In this case, Defendant has presented no evidence, other than its flawed reading of the Complaint, to support the propriety of the removal, leaving the Court to speculate as to what the aggregate amount of damages might be. To the extent there is any doubt about the amount in controversy, the Court must weigh any evidence submitted by the parties by a preponderance of the evidence to decide whether the amount in controversy is satisfied. *See id.*; *Dart Cherokee*, 135 S. Ct. at 554); 28 U.S.C. § 1446(c)(2)(B). As asserted by Plaintiff, despite the fact the amount Defendant has collected in overdraft fees for APSN Transactions is within its exclusive knowledge and total control, it has not proffered any of this evidence to support its removal. Given that Defendant has opted not to submit any evidence to support removal, the Court agrees with Plaintiff and finds under *Dart Cherokee* and *Scott* that Defendant has completely failed to show that the jurisdictional threshold has been met.

## III.
## CONCLUSION

Accordingly, for the foregoing reasons, the Court **GRANTS** Plaintiff's motion and **REMANDS** this action to the Circuit Court of Cabell County, West Virginia. ECF No. 10.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: October 20, 2023

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE